THE MANCHESTER FIRE INSURANCE CO. v. J. J. SIMMONS.

No. 1062.

**1.  Fire Insurance Policy—"Actual Cash Value" of Property.**

Where an insurance policy stipulates that the company should not be liable beyond the "actual cash value" of the property destroyed, proof of its "fair market value" is sufficient.

**2. Same—"Last Inventory."**

A stipulation in a fire insurance policy that the insured shall keep in an iron safe, etc., the last inventory of the business, will be construed as meaning the last inventory of the goods insured, and it need not include office furniture not covered by the policy.

**3. Same.**

The fact that certain items sued for as destroyed by the fire did not appear on the inventory, does not show the inventory to have been incomplete, where it was taken some time before the fire occurred, and additions had been made to the stock insured.

**4. Same—Ascertainment of Loss—Appraisement.**

It is no defense, in an action upon a fire insurance policy providing that the estimate of the loss incurred by the insured shall be made by the insured and the company, or if they disagree, by appraisers, that the loss has not been so ascertained, where there has been no actual disagreement between the insured and the company, but the company has simply failed, when notified and called upon by the assured, to take any action in ascertaining the loss.

**5. Practice on Appeal—Conclusions of Fact.**

The requirement of the statute that the Courts of Civil Appeals shall file conclusions of fact, does not require that they should also file a detailed statement of the facts upon which the conclusions are based.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*Morgan & Thompson,* for appellant.—1. By the terms of the contract sued upon, no suit can be maintained thereon until the amount of the loss has been ascertained and determined, either by agreement between the defendant and the assured or by appraisers, and before plaintiff is entitled to recover he must allege and prove either a compliance with the requirements of the policy or a waiver thereof. Mosness v. Insurance Co., 52 N. W. Rep., 932; Gasser v. Sun Fire Office, 44 N. W. Rep., 252; Insurance Co. v. Clancey, 71 Texas, 5; Insurance Co. v. Clancey, 83 Texas, 113; Banking Co. v. Stone, 49 Texas, 15, 16; Banking Co. v. Hutchins, 53 Texas, 67, 68; Insurance Co. v. Camp, 64 Texas, 524; Insurance Co. v. Brown, 82 Texas, 635; Insurance Co. v. Daniels, 33 S. W. Rep., 551.

2. The "iron safe clause" in the policy sued upon is an express promissory warranty, which must be strictly complied with, and the failure of the assured to preserve the entire inventory was a non-compliance with the requirements of said iron safe clause which entitled defendant to a judgment in its favor, notwithstanding the books and a portion of the inventory were preserved and produced. Goddard v. Insurance Co., 67 Texas, 69; Assurance Co. v. Altheimer Bros., 25 S. W. Rep., 1069; Crigler v. Insurance Co., 49 Mo. App., 11; Landman v. Insurance Co., 19 Ins. L. J., 572; Kelly-Goodfellow Shoe Co. v. Insurance Co., 28 S. W. Rep., 1027; Insurance Co. v. Center, 33 S. W. Rep., 554.

*Wolfe & Hare,* for appellee.—1. The amount of appellee's recovery under the contract sued upon is the damage to the property at the time and place of the fire, not to exceed the amount set forth in the policy, and the actual cash value of the property destroyed is to be determined by its market value at the time and place of its destruction. Dwight v.

Commissioners, 11 Cush. (Mass.), 201; 14 Am. & Eng. Enc. Law, 467-469, and authorities cited there.

There was no disagreement as to the amount of the loss; therefore, that clause in the policy never became a condition. Plaintiff alleged in his petition that he had complied with all the requirements of the policy, and under this allegation it was competent for plaintiff to show, and the uncontradicted proof did show that plaintiff offered to arbitrate, but the defendants declined. Mentz v. Insurance Co. (79 Pa. St., 478), 21 Am. Rep., 80; 2 Wood on Ins., 1013-1016; McCullough v. Insurance Co., 21 S. W. Rep., 207; Insurance Co. v. Kyle, 11 Mo., 278.

FINLEY, ASSOCIATE JUSTICE.—The plaintiff in this cause sued on a contract of fire insurance, issued by the defendant to the A. C. Simmons Jr. Medicine Company, and assigned by the assured to plaintiff after the loss occurred. Plaintiff sued for $2000 and interest, alleging that the loss was total, attaching to his petition, as an exhibit thereto, an itemized list of the property alleged to have been insured and destroyed. Plaintiff alleged, "that subsequent to the fire, the said Simmons Medicine Company and this plaintiff furnished to the insurance company all necessary proofs of the loss by said fire, and in every particular complied with all the requirements set forth in said policy of insurance."

The defendant answered by general and special demurrers, and special pleas setting up that the plaintiff was not entitled to recover, (1) because of an alleged breach on the part of the assured of that portion of the policy sued on known as the "iron safe clause;" (2) because of an alleged breach on the part of the assured of that portion of the policy which provides that any change in the interest, title or possession of the subject of insurance would work a forfeiture of the policy; and (3) because the policy provides that no suit can be maintained upon the policy until the amount of the loss has been ascertained and determined, either by agreement between the defendant and the assured, or, in the event of a disagreement, by appraisers, and that the loss had not been ascertained and determined by either of said methods.

Defendant's demurrers were overruled and the case was tried before a jury, which resulted in a verdict and judgment for plaintiff for $2084, from which this appeal is prosecuted.

Upon the trial the proof established the following facts:

1. The issuance of the policy and its assignment as alleged. The material portions of the policy under which the questions presented arise are as follows: "The Manchester Fire Assurance Company, of Manchester, England, in consideration of the stipulations herein named, and of thirty-six dollars and twenty cents, premium, does insure the A. C. Simmons, Jr. Medicine Company for the term of one year * * * against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding two thousand dollars, to the following described

property. * * * This insurance is subject to the iron safe clause as per printed form attached hereto.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciations however caused, and shall in no event exceed what it would then cost the assured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. * * * In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the assured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together then shall estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their difference to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expense of the appraisal and umpire. * * * This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award of appraisers when appraisal has been required. * * * No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the assured with the foregoing requirements, nor unless commenced within twelve months next after the fire."

2. The loss of the stock of goods insured, by fire, their value, and the furnishing of the proofs of loss, as alleged.

3. The fire occurred without the fault of the assured, and the assured complied with all of the terms and conditions of the contract of insurance. The particular facts proven, so far as deemed necessary to be stated, will be set forth under the several assignments of error considered.

*Opinion.* –The first and second assignments of error are presented together, and complain of the charge of the court in two respects.

(1) It is urged that the court erred in charging the jury that they might find for the plaintiff the "fair market value" of the property de-

stroyed, because the policy fixed the company's liability at the "actual cash value of the property." The expression "market value" of an article, and its "actual cash value," have practically the same meaning. The proof of actual cash value is furnished by showing what the article is worth in the market—the market value. If the market value proves the actual cash value, how can there be any material difference as to the measure of recovery authorized by the charge, and the liability as fixed by the terms of the policy? The court correctly stated the criterion of value by which the jury were to be governed. Dwight v. Commissioners, 11 Cush., 201; 14 Am. and Eng. Enc. Law, 467-469.

(2) It is contended that the measure of recovery authorized by the charge is erroneous, for the reason, that by the terms of the policy the company's liability is limited to the amount of the loss, as may be ascertained by agreement between the insurer and insured, or by appraisers. In other words, the contention is, that no suit can be maintained upon the policy until the amount of the loss be fixed, either by agreement between the parties, or through the action of appraisers.

The policy provides the basis for the ascertainment of the amount of the loss by the insured and the company, and stipulates that, "in the event of a disagreement as to the amount of loss," it shall be ascertained by appraisers.

The evidence shows that proof of loss was duly made, settlement repeatedly demanded, and that there was no admission of any liability by the company, and no disposition shown by it to ascertain the loss, by agreement or through appraisers. The assured did not refuse to endeavor to agree upon the amount of the loss, or to have appraisers determine the amount. In answer to a request by letter, the assured called upon an agent of the company in regard to the matter. The agent told him that he had been looking over the books, and was not exactly satisfied as to the question of title to the property, or that plaintiff was entitled to more than $1375. Plaintiff told him that there were three ways of settling; one was to pay the face of the policy, that he had lost $4000 worth of property and had only $2000 insurance on it. Another was to arbitrate the matter, and the last was to settle in court. The agent told him that he was not authorized to accept either method proposed. He called upon the general agent of the company also about the matter, and was informed by him, that "he never got in a hurry about taking his bearings," and was given no satisfaction. The company, through its agents, met the approaches of the assured for settlement with indifference, and exhibited a disinclination to go into any kind of investigation and determination of the amount of the loss. The parties did not disagree on the amount of the loss; but the company simply failed and refused to take any action looking to its ascertainment.

An ascertainment of the amount of the loss by agreement, or appraisers, is not made a condition precedent to a recovery by the terms of this policy. It is an obligation on the part of the assured for the benefit of the company, to agree with the company as to the amount of the loss, or

in the event of a disagreement, to submit the matter to appraisers. The company has not sought the benefit of this obligation; it has refrained from such investigation as might have led to an agreement, and by this course has also prevented the occurrence of the contingency in which appraisers are provided for by the contract. It certainly should not be permitted to sit back and take no action until suit is brought to enforce its liability, and then successfully urge as a defense that the amount of the loss has not been agreed upon, or fixed by appraisers. It is a provision in the contract inserted for the company's benefit, and it should have, at least, shown a willingness to go into the matter of the ascertainment of the amount of the loss in the manner provided, before complaining that it has not been so ascertained.

In Mentz v. Insurance Co., 79 Pa. St., 478, it is said: "But then it was incumbent upon the defendants below, in order to avail themselves of it, to show that a dispute had arisen attacking the amount of the loss. In other words, they must show that they admitted the validity of the policy and their liability under it, and that the only question was as to the extent of the loss."

Whether submission to arbitration is a condition precedent or not, will depend upon the language employed. A clause simply providing that in case of difference of opinion as to the amount of loss or damage, such difference shall be submitted, etc., is not a condition precedent, because the parties by the terms of their contract have not made it so. 2 Wood on Fire Ins., sec. 457; McCullough v. Insurance Co., 21 S. W. Rep., 207. The Clancey cases, reported in 71 Texas, 5, and 83 Texas, 113, cited by appellant, involve a different character of policy and an entirely different state of acts from the case under consideration. Had the plaintiff here refused to comply with the particular provision in the policy, after demand by the company, the authority would be nearer in point; but still not decisive of this case, because of the difference in the terms of the policies. The proposition of appellant is not believed to be sound.

The third and fourth assignments complain that the court left the jury to determine as an issue of fact, whether the assured complied with the "iron safe clause" contained in the policy. Appellant contends that the evidence was undisputed to the effect that the book containing the last inventory taken could not be produced, and that the inventory produced was only a part of the original inventory. The "iron safe clause" required that the last inventory should be preserved and produced. It is urged that the jury should have been instructed to return a verdict for the defendant.

The evidence does not sustain this contention as to the facts proven. The book containing the original inventory last made of the goods insured by the policy was presented and produced on the trial. It was shown by the evidence that this book did not contain the office furniture and fittings, amounting to $1600, and that this inventory had also been entered upon another book, in which the office furniture and fit-

tings did appear, and that said book had been lost, perhaps in the fire. The office furniture and fittings were not covered by the policy, and no inventory of them was required by the "iron safe clause." The evidence clearly showed that the last inventory of the stock as insured was produced upon the trial. The fact that some items were sued for as destroyed which did not appear upon the inventory, does not prove the inventory to be incomplete. The inventory was taken some considerable time previous to the fire, and it is not strange that additions should have been made to the stock after the inventory was taken. The assignments are not sustained.

The only remaining assignment raises questions already considered, and is not well taken.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered February 15, 1896.

Writ of error refused.